UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE: )
 )
Jeffery Gallo, ) Case No. 07-10958C-13G
 )
 Debtor. )

<u>MEMORANDUM OPINION</u>

This case came before the court on August 21, 2012, for hearing on the Debtor's Motion for Sanctions against Nationwide Trustee Services, Inc. and EMC Mortgage Corporation ("Motion"). John H. Boddie appeared on behalf of the Debtor, Mark A. Baker appeared on behalf of Nationwide Trustee Services, Inc. ("Nationwide") and EMC Mortgage Corporation ("EMC") (collectively referred to as "Respondents") and Anita Jo Kinlaw Troxler appeared as Chapter 13 Trustee. Having considered the Motion, EMC's response, the evidence offered at the hearing, the arguments of counsel, and the fee application for the attorney for the Debtor, the court finds and concludes as follows:

FACTS

This case centers around the actions taken by the Respondents to collect the money owed on a loan (the "Loan") which is secured by a deed of trust dated January 4, 2006, which encumbers the Debtor's residence at 460 Stanley Road, Stokesdale, North Carolina (the "Residence"). At all times relevant to this proceeding, EMC was the servicer of the loan and Nationwide was the substitute trustee under the deed of trust.

On July 16, 2007, the Debtor filed a voluntary bankruptcy petition in this court seeking relief under chapter 13 of the Bankruptcy Code. Pursuant to section 362(a) of the Bankruptcy Code, the automatic stay arose at the time the case was commenced. The notice that was served on creditors immediately following the commencement of this case, including EMC, included the following language:

> The filing automatically stays collection and other actions against the Debtor, Debtor's property and certain co-debtors. If you attempt to collect a debt or take other action in violation of the bankruptcy stay you may be penalized.

Nonetheless, in October of 2007, EMC caused a foreclosure proceeding to be instituted against the Debtor and a foreclosure sale was scheduled for December 6, 2007. This foreclosure proceeding was halted after the Debtor's attorney provided notice of the pending chapter 13 case to the substitute trustee. In April of 2008, EMC again resumed collection efforts against the Debtor by sending a demand letter and in May of 2008, a letter notifying the Debtor that the matter had been referred to an attorney for the initiation of a foreclosure proceeding against the Debtor. This prompted further communications from the Debtor's attorney to EMC regarding the pendency of the chapter 13 case and the threatened foreclosure proceeding was not filed at that time. However, in November of 2011, while this chapter 13 case was still pending and the stay was still in effect, EMC again initiated collection

efforts against the Debtor. EMC sent the Debtor a demand letter dated November 11, 2011, asserting that his loan was in default and stating that he was "at risk" of losing his home unless he paid a default amount of $22,337.36 on or before December 31, 2011. In a letter dated January 20, 2012, Nationwide notified the Debtor that foreclosure proceedings again had been initiated against the Debtor. The Debtor contacted his attorney and informed him of the letter and met with the Chapter 13 Trustee to discuss why foreclosure had been initiated even though he was current on his chapter 13 plan payments. In a letter dated February 6, 2012, the Chapter 13 Trustee notified the Respondents that they were in direct violation of the automatic stay as a result of having initiated the foreclosure proceeding and advised them that sanctions would be sought if they continued with the foreclosure proceeding. The Debtor's attorney also communicated with the Respondents to remind them of the Debtor's ongoing bankruptcy case and demand that they cease their collection activities. Notwithstanding these communications, Nationwide sent a letter dated June 11, 2012, notifying the Debtor that a foreclosure sale on the Residence was scheduled for August 9, 2012. The Motion for Sanctions that is now before the court was then filed on June 19, 2012. Even after the filing of the motions for sanctions, a letter dated June 28, 2012, from the Respondents provided the Debtor with a copy of a Notice of Foreclosure Sale referencing a foreclosure

sale to be conducted on August 9, 2012. Further communications between representatives of Respondents and the Debtor's attorney resulted in the Respondents finally terminating their efforts to foreclose on the Residence.

The Respondents do not deny the existence of the above-described communications and efforts to foreclose on the Debtor. Instead, they assert that their actions resulted from a misspelling of the Debtor's name. The more common version of the Debtor's name is spelled "Jeffrey" while the Debtor's name is spelled "Jeffery." The software program used by the Respondents when the alleged violations occurred required manual inputting of a mortgagor's name into the program. During this process, the Respondents allege that the Debtor's name was incorrectly transcribed as the more common version, "Jeffrey." As a result, the Respondents contend that when they checked to determine whether the Debtor was in bankruptcy the Debtor's case was not listed as a search result. Relying upon the absence of a record listing the Debtor's case, the Respondents assert that they continued their debt collection activities including the institution of the foreclosure proceeding in the summer of 2012.

## ANALYSIS

The Debtor seeks damages for violation of the section 362 automatic stay. The Debtor contends that there has been a willful violation of the automatic stay by the Respondents. Specifically,

the Debtor contends that the Respondents violated section 362(a)(5) which prohibits the post-petition enforcement of a pre-petition lien against property of the debtor and section 363(a)(6) which prohibits post-petition collection efforts to obtain payment of pre-petition claims. The imposition of sanctions or damages for a willful violation of the automatic stay requires a showing that (1) the conduct at issue constituted a violation of the automatic stay; (2) the violation was willful; and (3) the debtor was injured as a result of the violation. Hamrick v. United States (In re Hamrick), 175 B.R. 890, 893 (W.D.N.C. 1994); Foreston Coal Int'l, Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal & Coke Corp.), 83 B.R. 399, 403 (W.D. Va. 1988).

The Debtor's evidence showed both that the conduct of the Respondents constituted a violation of sections 362(a)(5) and 362(a)(6), and that such conduct occurred after Respondents had actual knowledge of this case. Thus, the conduct was a willful violation. The letters to the Debtor were attempts by the Respondents to collect the pre-petition debt owed on the Loan. The foreclosure proceedings were post-petition attempts to enforce the pre-petition security interest in the Residence. The evidence establishes that the Respondents had actual knowledge that this case had been filed prior to their violations of the automatic stay. The Respondents received actual notice of the Debtor's petition before July 24, 2008. This conclusion is evidenced by the

proof of claim filed on that date by the Respondents. The Respondents also received subsequent letters and phone calls from the Debtor's attorney and the Chapter 13 Trustee prior to their institution of the foreclosure proceedings. Moreover, such violations are clearly willful. In order to prove a willful violation, the Debtor is not required to show that the creditor had the specific intent to violate the stay. In re Atl. Bus. and Cmty. Corp., 901 F.2d 325, 329 (3d Cir. 1990); In re Sharon, 200 B.R. 181, 200 (Bankr. S.D. Ohio 1996). It is sufficient to show that the party knew of the existence of the bankruptcy case and that the creditor's actions were intentional. Id. A violation of the automatic stay is willful when "[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it." Hamrick, 175 B.R. at 892 (quoting Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292-293 (4th Cir. 1986)); Mitchell Constr. Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995). The evidence in this case conclusively established that the Respondents knew of the Debtor's bankruptcy case. Even though the Respondents may have misspelled the Debtor's name in making entries in their softwear program, they received the letter from the Chapter 13 Trustee correctly spelling the Debtor's name. Moreover, during direct examination, an employee of the Respondent admitted that

several notations were made in the Debtor's file which commented on the misspelling of the Debtor's first name and urged a correction which apparently was never made. The failure of the Respondents to fix their own error does not save them from a willful violation of the automatic stay. The actions of the Respondents constitute a willful violation because they continued to intentionally contact the Debtor and instituted the foreclosure proceedings against the Residence even though they had actual notice of his bankruptcy and the accompanying automatic stay.

The consequences of violating the automatic stay are set forth in section 362(k), which provides that:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

The use of "shall" in section 362(k)(1) means that in the case of a willful violation of the section 362 stay, the award of any actual damages is mandatory. Davis v. IRS, 136 B.R. 414, 423 n.20 (E.D. Va. 1992); In re Sharon, 200 B.R. at 200. However, the burden is on the debtor to demonstrate the extent of any damages. Official Unsecured Creditors' Comm. of Gen. Homes Corp. v. American

<u>Sav. and Loan Ass'n of Fla. (In re Gen. Homes Corp. and FGMC, Inc.)</u>, 181 B.R. 870, 883 (Bankr. S.D. Tex. 1994)(quoting <u>In re Alberto</u>, 119 B.R. 985 (Bankr. N.D. Ill. 1990)). "The court cannot award damages, costs or fines where none have been proven, even if both Rule 9011 and 11 U.S.C. § 362 have been violated." <u>Id</u>; cf. <u>In re Withrow</u>, 93 B.R. 436, 439 (Bankr. W.D.N.C. 1988)(awarding nominal actual damages of $100 where the debtor offered no evidence of actual damages beyond minor aggravation).

In the present case, the Debtor has established that actual damages were sustained as a proximate result of the willful violation of the stay by the Respondents consisting of attorney's fees related to and necessitated by the willful violation of the automatic stay by the Respondents. The attorney's fees incurred by the Debtor as a result of the willful violation of the automatic stay are in the amount of $5,115.00 for the services rendered by Debtor's attorney, including communicating with the Respondents and their attorney, preparing and filing the motion seeking relief against the Respondents, preparing for the hearing and appearing at the hearing. The services are described in detail in the application filed by Debtor's attorney (Docket item #85). The requested fees are based upon the Debtor's attorney having spent 18.6 hours in performing such services at an hourly rate of $275, which the court finds to be a reasonable amount of time for the services provided and a reasonable rate of compensation for such

services.

Under section 362(k)(1), an award of punitive damages is within the discretion of the trial court and proper only in appropriate circumstances. <u>Davis v. IRS</u>, 136 B.R. 414, 423 n.20 (E.D. Va. 1992). Appropriate circumstances ordinarily are those in which the creditor has demonstrated egregious, vindictive or intentional misconduct. <u>Lovett v. Honeywell</u>, 930 F.2d 625, 628 (8th Cir. 1991); <u>McHenry v. Key Bank (In re McHenry)</u>, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995). The willful violation of the automatic stay by the Respondents involved egregious and intentional misconduct on the part of the Respondents which warrants the imposition of punitive damages against the Respondents.

The evidence conclusively established that the Respondents had actual knowledge that this case had been commenced. The Respondents received notice by service of court documents evidencing the filing. The Respondents received additional actual notice from their communications with the Debtor's attorney and the Chapter 13 Trustee. The Respondents report that on May 15, 2012, they started using a new software program which should eliminate problems associated with incorrectly inputting debtor information into their softwear program. Although the court appreciates this remedial measure, it does not erase the egregious actions that occurred earlier. The Respondents became aware that the Debtor's name was misspelled and failed to correct the misspelling even

after receiving further notifications from the Chapter 13 Trustee and the Debtor's attorney. As a result of their failure to correct an internal error even after having noted the error, the Respondents continued to willfully violate the automatic stay. As a result of such egregious and willful misconduct on the part of the Respondents, the court finds and concludes that the Respondents are jointly and severally liable for punitive damages of $10,000.00.

A separate order in accordance with this memorandum opinion is being entered pursuant to Rules 9014 and 7058 of the Federal Rules of Bankruptcy Procedure.

This 10th day of September, 2012.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

John H Boddie, Esq.
706 Green Valley Road, Suite 505
Greensboro, NC 27408

Jeffrey Gallo
460 Stanley Road
Stokesdale, NC 27357

Anita Jo Troxler, Trustee